Our final case set for oral argument this afternoon is Bueker v. Madison County. Please proceed. Be pleased to court. Good afternoon. My name is Aaron Weissauer. I represent the plaintiffs in this case. This is a consolidated case arising out of Madison County. And since the filing of this appeal has since been certified as a class action as of June 16, 2015. This appeal concerns the dismissal of defendant R.L.I. Charity Insurance Company as a defendant. And whether or not plaintiffs in this case have standing to bring this cause of action against R.L.I. It's worth noting that our First Amendment complaint is brought in the name of the plaintiffs. But it's also brought in the name of Madison County. Extra for the use and benefit of the main plaintiffs. And also for the benefit of all those similarly situated which include the class of this case. There's two statutes at issue here that we think are underlying by which the bonds on R.L.I. were issued. And particularly those two statutes require the issuance of a surety bond for a county treasurer in the state of Illinois. It's required to have a county treasurer upon election is required to have a surety bond. And also as county collector by which he and his surety are firmly bound to the people of the state of Illinois. The surety bond issued in this case which I believe is in the record at page 76. Names the obligee of that surety bond or the party to whom the benefit of that surety bond runs as being Madison County Government. The plaintiffs contend that Madison County Government is an anomaly in and of itself. It doesn't mean necessarily anything. What's important is what the statutes provide. Which is that the surety bond is to be issued to the people of the state of Illinois. And to that extent the statute says that it should be incorporated into the terms of that surety bond. After all, who other than to the people is a surety bond like this to run? In this case, this bond was issued for the bond principal, Frederick Bathine, who was a former Madison County treasurer and also county collector. And Mr. Bathine, pursuant to the terms of the statutes and pursuant to the terms of this bond, was to faithfully perform and discharge his duties as both treasurer and county collector. It seems undisputed that Mr. Bathine failed in that regard, having pled guilty before United States District Judge Herndon to antitrust conspiracy charges. Again, more than anyone, it is to the people of the state of Illinois here that he has failed because of the conspiracy in which he had vowed himself. The law standing against Supreme Court precedent in this state supports individuals, corporations, other private parties bringing claims on public official bonds. Those public official bonds are what are considered faithful performance bonds. They are there by which the surety and the bond principal, in this case, Mr. Bathine, are to faithfully perform their duties, or by which Mr. Bathine is to faithfully perform his duties, and they charge themselves together in accordance with those duties. Not unlike the two bonds, or not like the two statutes in the bond here, is the case of the Supreme Court case of Illinois Governor versus Dodd, in which, like this case, there was a surety bond issued for the benefit of the clerk, which required the faithful performance of that clerk's duties. It was conditioned upon the faithful performance of his duties of office. Here, it's exactly the same. The statutes are faithful performance statutes, and the issuance of a faithful performance bond. Mr. Bathine was to faithfully perform his duties, and he did not. And as a result, Mr. Bathine and his surety have bound themselves up as treasurer, as family collector, to faithfully perform those duties. Mr. Bathine reached the condition for those duties, and for that, his surety is liable. Looking back just to the Dodd case, Mr. Bathine and the surety can only escape liability by the faithful performance of those duties, say it in a positive way. That's certainly not the case here. To that extent, having firmly bound themselves together, that surety's liability is coextensive with that of its bond principal, Mr. Bathine. In the Dodd case, the court further went on to say, because it was a county clerk that they were talking about, again, which is a public official, that there's really no distinction to be made between a county clerk, a court clerk, or any other public officer. That those bonds are the same, and the liability necessarily is the same for all of those kinds of bonds where there's a nonfeasance and a breach of those fiduciary duties. Another case from the Fourth District Court of Appeals that I've cited in our brief is the Bachman v. Brown case. And it quotes extensively from Dodd, and adds that we are of the opinion that the bond is given to protect the interests of the county, but also anyone who may be injured by the official acts of that county clerk. And again, if we're looking to the Dodd case, which does not draw a distinction between a county clerk or any other public official because the bonds are the same, the public should be protected by that officer's bond. Similarly, in the United States Supreme Court case of Howard v. United States, there was a clerk of the United States that had a bond issued similarly as here, and the court said that we're of the opinion, Congress intended, that the bond of the clerk is to be for the protection of all suitors, public or private. The bond of the clerk is to faithfully discharge his duties, and therefore any suitor who's injured should be able to bring a claim. In this case, it's worth noting that not only did Mr. Bath on faithfully perform his duties, the Madison County Board, perhaps even other Madison County officials, chose to turn a blind eye to the actions he was performing. And in that regard, he proceeded to conduct the tax sales as he did, and he acted under cover of his office in doing it. Tax sales are official acts of his office as county treasurer, and he abused that office when he enacted the policies that he did and conducted the tax sales in the manner that he chose to. Another Supreme Court case from the state of Illinois is the case of Andrea Bartels. This involved a county probate clerk. And much like how we brought our case here, the case was brought in the name of the people, and it was found that the plaintiff had a direct cause of action against the county clerk and its surety. Interestingly enough, nobody, none of the defendants, including Mr. Bath and himself, have ever said that the plaintiffs here don't have standing to bring a cause of action against him, and certainly we don't have, certainly we have just the same standing to bring this case against his surety. Another helpful case for this court to consider is the case in the city of Cairo. This was a case, again, in which Murphy, on official bonds, is quoting quite extensively, and goes on to say that such bonds are designed to secure the faithful performance of official duties in the discharge of which individuals, like the plaintiffs here, and corporations have a deep interest, and therefore should have the privilege of suing on such bonds for injuries sustained by them through the negligence or through the malconduct of the public officer. That's exactly what we have here. The very purpose of these public official bonds is more than just to protect the named obligee, Madison County Government. It's to protect the people, and the people here are third party beneficiary, and that's the case in many types of bonding situations where maybe not specifically the named obligee is the party intended to bring the case and have standing to do so. And here it seems certain that the public, the individuals here as plaintiffs, have standing to bring this case. I'd be without remiss without mentioning to this honorable court the case of Calper v. Nyberg, which is a case that was heard before this court, and I apologize that it's not briefed in my case only because the Supreme Court opinion of Calper v. Nyberg came down in March of 2015. But Calper cites to both the Bartels and to the Dodd case that I previously mentioned to you, which appears to still be good law in this state. Accordingly, to the extent that public officials like Mr. Batlin breach their ministerial duties, his surety should be liable. Much like this case, the defendant in Calper filed a 615 motion just the same as RLI seeking to dismiss the case. Let's see. I mean, there was no surety bond involved in Calper, though, right? It was a direct suit against the circuit clerk and the sheriff. That is correct. However, the Supreme Court opinion seems to recognize the fact that if we have that same ministerial duty applies, the same action could be the same just as much against the surety as much against the individual public officer. Well, I mean, the issue here is whether you can file a direct action against the surety bond. That's correct. That's what we're really talking about. I mean, your opponent says in his brief even if you can't file a direct action, you may still collect on the surety bond. Do you agree with that? Well, I don't know. Well, I guess, I mean, I'm, you know, Fred Bathon signed a public official bond saying he found himself to faithfully perform his duties. And then RLI or whatever it is, the insurance company, as surety, acted as surety on his promise that he would faithfully perform the duties of his office, which would seem to mean that, you know, if in this case you prove that Fred Bathon did not faithfully perform the duties of his office, then the surety may be on the hook. But that's different than being able to sue the surety directly. I think the case law seems to stand for the proposition, particularly if we go back to the Dodd case where that lawsuit was brought, you know, directly against the surety at that same time. It still is good law. There's nothing that seems to me from the underlying case law to say that we can't bring this action directly against the surety. What's the difference between a public official surety bond and what I'll call an indemnity insurance contract like you have on your car or whatever? Of course, we all know you can't sue the insurance company directly. You sue the person who has the liability insurance. If you get a judgment, the insurance company pays it. Or if they don't, then you pursue something. What's the difference between this kind of surety bond and indemnity insurance contract? Yes, Your Honor, I would argue that suretyship is different than insurance. The insurance contract is a two-party agreement, you know, between the insured and the insurer. Suretyship is a three-party agreement between a bond principal, which in this case is Mr. Bathon, the obligee to whom the benefit of the bond runs, and the insurer. So it's a three-party agreement. And it's different in that under an insurance policy, there's a direct name insurer. You know, we think of insurance policies all the time, but who's able to bring a claim beneath that insurance policy? It would be the insurer. And here, in a lot of different surety bonds, some of which have been cited by both my opponent and myself, where third-party beneficiaries that are an unnamed obligee to whom the benefit of that bond may run, it's allowed to bring a claim underneath that bond. Okay. And I'm probably doing something I shouldn't do here and asking some questions sort of off the top of my head, okay? But that kind of picture of surety is almost like a cosigner. You know, what if you went to court on this case and you got a million-dollar verdict against Fred Bathon, and lo and behold, he had a million-dollar CD in the bank and you collected every penny of it? I mean, he's first obligated to faithfully perform his duties, right? And then the surety bond, the official bond company, they are acting as a surety on that promise. I would agree, Your Honor, that, yes, a bond principal, in this case Fred Bathon, and to the extent that he may even be obligated to indemnify the surety company here would be the primary outlaw gore and that the surety would be the secondary outlaw gore. However, their liability should still be coextensive with each other, and nothing about that necessarily prohibits us from suing both Fred Bathon and the surety together in the same case. If Fred Bathon should fail to pay, certainly the surety needs to be there for that exact same purpose, to pay because he hasn't. I mean, is this about you being able to reasonably enforce any judgment you get against the surety as opposed to having to bring them in separate from the principal or after the judgment is obtained is my point? They've not been brought in separately necessarily because they've been brought in together as co-defendants. So we should be, Mr. Bathon is presently incarcerated. We should be able to proceed just as equally against the surety company as we should be against him. And just to go back for a second to the Calper case, using that same analysis, therefore, from the Supreme Court opinion, since Bathon reached those official and ministerial duties, therefore, he and the surety should be liable. And here, one of the reasons that we as the people believe that we have a claim is because it's not Madison County government that's been financially harmed here by Mr. Bathon's actions. They've probably benefited from Mr. Bathon's actions, having also turned a blind eye to what he was doing and how he was conducting his actions as treasurer, but it's rather the people that have been harmed because they have the direct financial interest. It's them who have suffered the loss in some cases of the property or had to pay exorbitant amounts of money because of the scheme that was concocted by Mr. Bathon and the other co-defendants. It's their properties that have been sold all under the color of his office. And so all of the reason that we should now be able to bring RLI into this proceeding as a co-defendant. There's a case cited in our brief as well that in the city of East St. Louis where it was said that the sureties of the treasurer bonds were liable to third persons for damages for unlawful acts of the treasurer in that case done in his official capacity by a virtue of the office. And my opponent, as it's well briefed, spends a significant amount of time, as do we in our own brief, talking about the Hicks case, which this court decided, I believe, in 1981. But the Hicks case is the important distinction to draw from this case, and I've worked extensively hard to try to distinguish, again, that type of insurance policy, which is an indemnity policy from the policy in this case. The policy is located in the record at page 224, and again, our surety bond is located at page 26. But it's not. This was an idea of Governor Thompson to require some type of policy to protect against the dishonesty of a certain state of voice. That's why it was there. And my concern is that a close reading of this court's opinion is that it does not really seem that this court ever founded that policy, although it was represented to this court as being a public official bond, that there's no finding that it actually was a public official bond. And so to that extent, you know, there's this assumption because counsel on both sides made the assumption that it was a public official bond, when in fact it wasn't. And so it's hard to follow Hicks, or at least it's hard for the plaintiffs to ask the court to see why the court should follow Hicks, when it's just a hypothetical that it is a public official bond. When you compare it to the public official bond that's required by the two statutes that are at issue here, and when you read them and you read that in conjunction with the bond that was issued by ROI, it's clear that it's a different type of instrument than what was issued in the Hicks case. Was the bond in the Hicks case, refresh my memory, required by statute or by rule? Our read of that, Your Honor, is that it was not required by statute. This was something Governor Thompson believed that was required, and so he... So some sort of executive order, executive rule that had been promulgated by the governor? I'm not sure if I can say it's an executive order, but he believed it was necessary to have this in place, arising out of this particular agricultural issue. But my reading of the record, including the documents that are on file here in this courthouse, makes it clear that the policy was issued by him as an idea to ensure those losses resulting from the dishonesty of those state employees. But regardless of that, it's still distinguishable on its face because it also speaks a language of an insured, what the exclusions are, policy limits. It reads more like an insurance policy than a surety bond, where here the surety bond speaks of the surety, the bond principle, who the obligee is, and it's issued pursuant to a particular statute. In fact, while it's not exactly the same as what the statutes read, the bond here issued by RLI follows pretty much what's prescribed by the two statutes that are issued. And the other thing that the policy in Hicks does is it defines who can bring the claim. And again, the insurer can bring the claim, and it even defines by definition the word loss, which the loss has to be sustained by an insurer. Here, if we look at the surety bond that's issued, it does no such thing. There is no such equivalent term issued by the bond that's issued by RLI. So we would stand for the proposition that the complaint that we filed sets forth sufficient facts to make a cause of action against RLI, that the trial court's order dismissing RLI should be reversed, and it should sit back to Madison County for trial against RLI. Thank you, counsel. You have a chance to rebut. Thank you, Your Honors. If the judge may please the court, I am Ralph Coyne. I represent the FLE RLI insurance company. As you heard from counsel, RLI issued a dual obligation bond on behalf of Frederick Van Thon, relating to his duties as treasurer and collector of Madison County. This bond named Madison County government as the obligee, or in other words, the entity on whose behalf the obligation under the bond is owed and who may make the claim. Now, counsel talks a lot about these cases and argues, Your Honor, that Mr. Van Thon didn't perform his duties faithfully, and therefore this bond is triggered. That's not the issue before you, Your Honors. The sole issue before this court is whether the individual plaintiffs, now this plaintiff class, may bring an action directly against RLI. Now, we would submit that under the terms of the bond, the statutes requiring the bond and establish a precedent, the answer is no. The trial court ruled correctly on this issue. We would rule in favor of RLI and dismiss the count that was directed against it. Now, plaintiffs argue that even though they are not the named obligees or claimants under the bond, and even though the statutes do not provide for a direct action by a third party, this court should allow such a direct action. Let me just ask you about, you know, what about the fact that this bond showed Madison County government? I mean, it is pretty clear in the statute that it should have been the people of the state of Illinois. I mean, is that a scrivener's error? I mean, under what scenario would it be Madison County government? I think the assumption here, and of course I'm not here with information, and it's not part of our case at this point what happened in the underwriting process. I think it's standard when a public official bond is underwritten in the industry that the particular government entity on whose behalf it's being written would be the named obligee. But to focus a little bit more on the question, the fact that these statutes exist, and they are the reason and they compel the county to obtain the security for the protection of the county, that statute and the terms contained therein are what must be written in the bond regardless of whether it says Madison County government. So the issue then before you is what that phrase, people of the state of Illinois, means. Okay, so you don't disagree with your opponent's argument that, you know, really this bond is in favor of the people of the state of Illinois? No, we do not. Okay. No, we do not. Okay. Yeah, I think that's a standard factor of surety law where you have a statutory bond that dictates language. If the instrument itself does not contain that language, the court must read that in. It happens quite often, and I don't mean to get off tangent, in the public instruction bonds where a surety bond that comes out of the underwriter's office contains terms that are different from the public instruction bond. That issue happens quite a bit. Okay. Now, as I was starting to say, the plaintiffs essentially are asking this court to rewrite the terms of the bond, rewrite the relevant statutory framework, and, over time, establish a legal precedent. The plaintiff's precise argument was previously made before this court, and he addressed it briefly in Hicks v. Etna Insurance in 1981. In that case, this court held that individual plaintiffs were not entitled to pursue a direct action against Etna. Here, as in Hicks, neither the bond in question nor the statute requiring the bond allowed for an action by third parties. Hicks is directly on point and is controlling authority. The plaintiff advances two arguments in his briefs as to why this court should ignore the precedent of Hicks, both of which are without merit. First, the position which the plaintiff advocates most strongly is that this court got Hicks wrong and it should now be overturned. Second is that Hicks is somehow distinguishable if both are without merit. The first is the plaintiff's argument that Hicks was wrongly decided. It's a poor plaintiff's cite to five decisions from 1876, 1891, 1912, 1915, and finally 1944. None of the decisions address the issue in the factual context involved in Hicks, which is the same in this current manner. These decisions fall far from showing that Hicks was wrongly decided and are completely irrelevant. The first of these cases, Boffman v. Brown, out of the Fourth District, it was from 1915. The court did recognize an individual right of action under its specific facts involving a bond issued to a county clerk. Now, nothing in that opinion references the precise language of this bond, the entities that are named as the obligee, or whether the bond was procured to a statute that would designate proper claimants. The only language that the bond references Boffman in respect to the bond is the nature of the obligation, that the obligation is contingent on the faithful performance of the responsibilities of Mr. Brown. It is entirely possible, and this is speculation because we don't have that instrument. It's lost to history. And I would say, given the vintage of the case, entirely probable that the bond simply did not name the specific obligee. At this point, we don't know. Second, the claims reference two cases cited by the court in Boffman, Governor v. Dodd from 1876 and Bartels from 1891. Again, these opinions are completely devoid of relevant facts. They give no information as to the language of the bonds, the obligees under the bonds, or any relevant statutory provisions governing the procurement of the bonds, and similarly lack any precedential value. Dodd has no facts in the opinion as to the bond. It doesn't address the issue of state. Bartels only references the faithful performance language of the bond, makes no mention of the named obligee. We should also note that Hicks Court referenced Dodd and then dismissed it as not having any precedential value. Briefly, the other two cases, City of Cairo, easily distinguished. The opinion, again, doesn't set forth the relevant language of the bond or does it indicate any specific obligee. Finally, the plaintiff cited Apperson v. Hartford, which was dealing with, I believe, a liquor bond. It is true that the court recognized the existence of certain cases that it considered to be exceptions to the general rule, but it doesn't say exactly what those are, and anything in that case on that issue is clearly dictum. Now, plaintiffs argue that these five cases represent overwhelming precedent against the anomaly of Hicks. There's no reasonable interpretation that would find these as overwhelming precedent against Hicks. Hicks is directly on point. It represents controlling authority. The plaintiffs, under Illinois law, the only proper plaintiff under a public official bond would be the named obligee or, where the bond is required by statute, any claimant that the statute specifically authorizes. That's a proposition set forth in Hicks, and I believe it to be correct. In Hicks, the individual plaintiffs sought to recover under instruments issued on behalf of employees of the state for their failure to properly oversee a grain elevator. The instruments in question here did not name the individual plaintiffs as obligees, nor did they indicate that third parties could maintain a direct action. Moreover, and this is where I think we differ from plaintiff's interpretation of the record in Hicks, we do believe that there was a statute that required the state of Illinois to obtain a public official surety bond relative to those individuals. And we cite to this in our brief. And additionally, we believe that the statutory language here uses the same statutory language of the two statutes in our case, specifically that it requires the procurement of bonds, stating that the obligee should be identified as the people of the state of Illinois. The court in Hicks held, given the language of the instruments issued by Edmond and given the language of the statute, the direct suit by a third party is not authorized in the case of properly dismissed by the circuit court. In this matter, as in Hicks, the bonds do not name third parties as obligees. The relevant statutory language is identical. Because the bond issued by our ally is a dual position bond, the two separate statutes govern, both use the same language, the people of the state of Illinois. And counsel, the statutory language was referenced in the Hicks opinion? It was not, but the statute itself was. And as you go further into the opinion, Hicks makes the proposition that the only proper claimant or plaintiff on a public official bond would be a named obligee or an entity who was authorized to bring a claim or a suit by statute. Hicks then further goes on and cites to United States Supreme Court authority that sub-scored that proposition, that there must be either a statutory or contractual authorization to make the claim. And then finds that there was neither here. So the Hicks opinion does not specifically address people of the state of Illinois, but it certainly references the statute and this proposition. Now, plaintiff also attempts to distinguish this because the instruments were different here. In fact, the instrument in Hicks was not a true public official surety bond. That was something else altogether, a form of fidelity bond. I would maintain that in this case, it's a distinction without any relevance. What we believe happened here, if you look at the facts, the type of loss that the plaintiffs in Hicks were trying to recover for was something other than intentional misconduct that a fidelity bond would cover. So we see the plaintiffs in Hicks advocating that this should be treated as a statutory public official's bond. What I think occurred here, I think that this court can take judicial notice of, the state of Illinois was most likely statutorily required to obtain a statutory public official bond. They obtained something else, this fidelity bond, which covered a smaller scope of risk or loss than what the plaintiffs were seeking to recover here, which would have been a lack of faithful performance. The plaintiffs therefore advocate that this instrument, this fidelity bond, should be treated as a public official surety bond. This court then took a look at these issues and said, well, threshold to make a determination as to whether or not we need to expand the risk under that fidelity bond to include a lack of faithful performance, this court addressed a standing issue. It said, we're going to treat this as a statutory public official bond, and we're going to look at the standing issue, and here's our reasons why you don't have standing as an individual plaintiff. That's why Hicks is controlling here. That's why Hicks is directly on point, and that's why this court should, unless this court should, fine for the appellee and deny this appeal. Okay. So let me ask you, you alluded to it in your brief that, you know, affirming the dismissal of this account directly against your insurance company doesn't mean that no one would ever collect on this bond. What are the circumstances under which, let's say we do affirm this dismissal, what are the circumstances under which someone, these plaintiffs, would collect on the bond? Well, I was listening with great interest to your exchange with counsel, and I would disagree in terms of his assessment of how RLI's potential exposure or liability would come into play here. RLI owes the allegation to Madison County. It was a named allegy, and I believe the term people of the state of Illinois here refers to the government entity and not individuals. Madison County has not yet made that claim, and what I say in the brief is we very well, we being RLI, may have to respond to a claim brought by the government in the event that they feel that there was an actual injury for which they're entitled to recover under this faithful performance bond for the conduct of Fred Bathan. That hasn't happened yet. Is Madison County a defendant in this case? Absolutely, yes. Okay. So the judgment could be entered against Madison County. Correct. And at that point a claim would be made, I take it. That's correct, Your Honor. And to further discuss it. You're saying it's not enough for them to just get a judgment against Fred Bathan, even though it's his faithful performance that you're acting as a surety for? Correct, because Fred Bathan, under that surety bond, and I believe under the terms of the statute, bound himself to Madison County for the faithful performance. This is where we go back to my earlier question about what's the significance. I mean, because I had it in mind here that you were, you know, had some idea about it was meaningful that it said Madison County and not the people of the state of Illinois. I mean, I kind of took that as maybe that was just a mistake and it should have said people of the state of Illinois. But you're saying that it's common practice in these public official bonds to name the county government if it's a county official. Correct, Your Honor. Well, the county government is the entity whom the obligation will run. And why I believe that is not inconsistent with the statute, because I believe, and I believe under the holding in Hicks, that that phrase people of the state of Illinois, it doesn't matter what I believe, I believe that's what the precedent says, refers to not individual people as it does the government. Body politic. Correct. Okay. So your scenario would be if a judgment is entered against Madison County, then that's when your bond comes into effect. Yes. And you said earlier at this point Madison County had not made a claim or… That's correct, Your Honor. Okay. And so, again, showing my ignorance here, I mean, there's no duty to defend or anything like that under a surety bond. It's just if a judgment's entered, you're surety on it. That's correct. And there are as many different types of surety bonds and different language and different scopes of obligation as there are insurance policies, as you can well imagine. This particular instrument is more the nature of a very lean, defeasance bond. I think it has some of the very old 19th century language in it that says, you know, the obligation is such that if it doesn't say we're going to be responsible if Fred Baffin doesn't perform his duties, it says the obligation is null and void if he does faithfully perform his duties. So, I mean, it's – but that's exactly… I've signed some of these bonds before. I've always kind of wondered myself exactly, you know, what this means. Because it is old 19th century language. It varies on these things. So, okay. But further to the exchange you were having with counsel, you were asking about to who – that you're questioning about RLI and who they're going to be surety for. Fred Baffin binds himself to the government entity. Madison County would look to him first for recovery, assuming he doesn't have that million-dollar CD somewhere. Then they come to the secondary outpour, which is the surety. Okay. All right. So, again, I think I covered this already. When we're talking about Hicks, plaintiff argues that the distinction, the types of instrument here is relevant. I would maintain it doesn't. The court was looking at whether or not there was a right of action for individuals. You have a similar situation where you have named entities. In that case, it was a fidelity bond. Who might make the claim? And additionally, you had the language, people at State of Illinois and Hicks, I believe, correctly ruled on that standing issue and found that there was no standing. So regardless of any differences between the nature of these instruments, Hicks is controlling. It has precedential basis on account of how the court chose to rule. I know plaintiff would wish that that standing issue hadn't been the basis, but I think it was the correct basis, and it prevented, I believe, the Hicks court from having to get into any types of issues through writing the scope of liability of that fidelity bond. Again, plaintiffs argue that in issuing this decision, the court was misled, and they would prefer that this had not been made or had been made on some other basis. We believe that the basis that Hicks stated is correct and is controlling precedent. The opinion of Hicks is based on the court's decision, again, that regardless of whether the instrument was an indemnity contract or fidelity bond or a surety bond, they were treating this as a statutory public official's bond under the factional circumstances. The Hicks decision was not based on the court being misled, but rather was a correct application of the facts of law. Hicks' decision is good law, constitutes controlling precedent, and is directly applicable to the current matter. Accordingly, we believe the certain court's dismissal of the cause of action against our alignment is correct and should be affirmed. A couple of matters, I think we already addressed it, as to there is continuing potential exposure here for our alignment. So the argument that somehow our alignment is out of this picture altogether isn't correct. Second, to the extent the plaintiff is asking this court to overturn Hicks on the basis that they have cited, this would require the court to make essentially new law. They would allow for third-party claims against the issuer of a public official bond, regardless of the contractual language contained in such a bond or the language contained in any statute or regulation requiring a public entity to obtain it. A plaintiff makes this argument in his reply brief when he states that under these cases, and I quote, all persons agreed to have standing to sue on a public official's bond, regardless of whether standing appears from the face of the bond or statute. I would submit that such an expansive position is not supported by these cases and that there is no basis in law for expanding liability beyond what is agreed to by the parties or beyond the requirements imposed by the legislature. In conclusion, Hicks was correctly cited. Hicks is controlling precedent in this case. The plaintiff has no direct right of action against our alignment in terms of the bonds or the statutes requiring Madison County to obtain it, such as the trial court's granting of our alignment. So this was correct, and the plaintiff's appeal should be denied. Thank you, counsel. Thank you. Rebuttal. Thank you, Your Honors. We heard from my opponent about a number of the old cases that I cited from the 19th century, but just because it's old law doesn't necessarily mean that it's bad law. And when we look to the case of the governor of the state of Illinois versus Guy, in that case, it's directly on point with where we are here. This is a case of the Supreme Court of the state of Illinois from 1876, Barr versus Johnson, which was the plaintiff. A private corporation, a private entity, much like the plaintiff's here, an individual was able to make a claim on his bond. And maybe we don't have the instrument anymore, the bond form anymore, but we do know, and it says, the statute has prescribed the condition of his bond, and law provides it shall be conditioned for the faithful performance of his duties as office and to deliver up the papers, et cetera. Now he and his surety under the terms of this bond have engaged and bound themselves, for he is clerk. And that's exactly what we have here. It's no different than the exact same case here, very similar exact faithful performance language that Fred Bathan and Arnold I. have bound themselves together for the purpose of the beneficiaries of this bond. Now, Hicks again, perhaps it's, you know, arguably the right decision when you look at the instrument. And we believe that the instrument here is very important. That, yes, we're looking at an insurance policy comparing it to a surety bond. And again, when have we known an unnamed insurer to make a claim? But unnamed beneficiaries of surety bonds make claims all the time, including in the construction context, as we heard from RLA's counsel say. And Hicks was just based upon the false assumption that what they had before it was in fact a public official bond when it was clearly not. And I disagree with my opponent about whether or not we have to go and obtain a judgment against the city of East St. Louis. I'm sorry, against Madison County first. In the case of the city of East St. Louis, a court made, which again was an action on treasurer's bond, it was said it is without merit that the injured party has to go and sue the city first and obtain a judgment. We shouldn't have to go and get a judgment against Madison County if Madison County wasn't the party in this case. It's Fred Bathan who charged himself with faithfully performing his duties, not Madison County. We should be able to proceed against Fred Bathan and his surety at the same time. Well, okay, is that what your difference is here with your opponent? I mean, your argument would be a judgment against Fred Bathan invokes the surety bond. Absolutely. Okay, and that's still a separate question from whether you can sue it directly. But they say you've got to get a judgment against Madison County government. You say Fred Bathan because there's surety for him faithfully performing his duties. Your Honor, it's not necessarily that Fred Bathan was poor, but I'd argue, and I believe I argued at the trial level as well before Judge Mittendorf, that this is not a judgment bond. This is not a bond where we need to go and obtain a judgment first in order to proceed against ROI. We should be able to proceed now against ROI. Finally, and I'd reiterate that this bond, and looking at the cases of Cairo and the other cases that we've cited, if it's not the people of the state of Illinois who's to benefit, who is it? Madison County here isn't defending. They're aggressively defending this case. They are standing behind, you know, Fred Bathan's actions, for lack of better words. And, as I said, even when all these things were going down, chose to turn a blind eye. They shouldn't get the benefit of this, of this bond. This bond should be for the benefit of the people who've been financially harmed. They were the people dealing with Bathan from day to day. And so it's the people, therefore, in this case, and the members of the class that they represent to whom this bond is issued and to whom this bond should be made. Thank you. Thank you, counsel. We will take this case under advisement and issue a ruling. The court will be at recess.